

**FILED & ENTERED**

**DEC 29 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** sumlin    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

In re:

Elizabeth Vazquez,

Debtor(s).

Case No: 2:16-bk-10699-NB

Chapter: 13

**OPINION (A) GRANTING RELIEF FROM THE AUTOMATIC STAY AND (B) MAKING THAT RELIEF EFFECTIVE NOTWITHSTANDING ANY FUTURE BANKRUPTCY CASES**

Hearing Date:
Date:  September 19, 2017
Time:  10:00 a.m.
Place: Courtroom 1545
       255 E. Temple Street
       Los Angeles, CA 90012

   This case involves an an increasingly common fraud on creditors known as "hijacking." That is a scheme of issuing a grant deed purporting to transfer an interest in property from a borrower to a debtor in bankruptcy, so as to implicate the automatic stay of Section 362(a)[1] and thereby stop a foreclosure of the borrower's property.

---

[1] Unless the context suggests otherwise, references to a "Chapter" or "Section" ("§") refer to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), a "Rule" means one of the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, or other federal or local rule, and other terms have the meanings provided in the Bankruptcy Code,

Typically the debtor in a hijacked case has been chosen at random, and is not aware of the scheme. Sometimes even the borrowers themselves are not aware of the scheme: the borrowers retain someone (an "Agent") who claims to be able to stop the foreclosure by some legitimate means, such as negotiations with the mortgage holder, but then that Agent forges the borrowers' signatures on a grant deed to a random debtor and transmits the deed to the foreclosing mortgage holder with a demand to halt the foreclosure sale.

Most mortgage holders in such situations call off or reschedule the foreclosure sale because, if the debtor actually does have an interest in the property and the automatic stay applies, penalties for violating the stay can be substantial. *See, e.g.,* Section 362(a)(3) & (k). Some Agents even persuade the borrowers to make monthly payments to them, instead of the foreclosing mortgage holder.

The borrower in this case alleges that a scenario substantially like the one outlined above is what happened to him. He asserts that he is entirely innocent of any participation in this scheme. For this reason, he argues, this court should not grant relief from the automatic stay to proceed with foreclosure, even though he is hopelessly behind in his mortgage payments.

The borrower also asserts that this Bankruptcy Court lacks jurisdiction over the subject property because the debtor has expressly disclaimed any interest in the property. Therefore, he argues, this court cannot grant relief from the automatic stay that will continue to be effective notwithstanding any <u>future</u> bankruptcy cases involving the property (sometimes called "*in rem*" or "*ex parte*" relief). If the borrower is correct then all Bankruptcy Courts would be powerless to prevent repeated hijacking, with or without borrowers' participation.

This opinion concludes that (1) this Bankruptcy Court has jurisdiction to grant the relief requested by the foreclosing creditor; (2) presuming for purposes of this

---

the Rules, and the parties' filed papers. For brevity, documents are referred to by docket number rather than their full title (*e.g.*, "dkt. __").

discussion that the borrower was duped by his own "foreclosure prevention" Agent, nevertheless as between the borrower and the creditor, it is the borrower who must bear the consequences of his own Agent's acts; and (3) it is appropriate on the facts presented to terminate the automatic stay in this case and make that relief continue to be effective notwithstanding any future cases, subject to the limitations described below. In reaching these conclusions, this court interprets the statutory authority to grant any type of "relief" from the automatic stay – including but <u>not limited to</u> the examples listed in the statute – as sufficient to grant relief that will be applicable notwithstanding any future bankruptcy cases.

None of the foregoing should be construed as a termination of <u>all</u> of the borrower's rights to retain his property.  To the contrary, if the borrower can show changed circumstances or other good cause to be relieved from this court's order in a future bankruptcy case then he can obtain the protections of Section 362(a).  Essentially this court's ruling only shifts the burden to the borrower to establish that the stay should apply, instead of leaving the door open to ongoing abuse of the bankruptcy system through hijacking or other schemes.

1. **BACKGROUND**

In or around August 2005, James and Rosa M. Zarian ("Borrowers") executed a note and deed of trust in favor of Washington Mutual Bank, FA (together with all assignees and/or agents, "Creditor"), in connection with their purchase of real property located at 2707 Blue Water Drive, Corona Del Mar, California 92825 (the "Property"). Borrowers fell behind in their mortgage payments.

In or around May 2012, Borrowers allegedly sought and retained the services of Sean Cohen (Borrowers' Agent) to assist them in working out a loan modification in connection with the Property.  Under that arrangement, Borrowers allegedly began sending their monthly mortgage payments directly to their Agent's wife's bank account.

Borrowers assert that since May 2012, they made aggregate payments of $67,750.00 to their Agent.  It is undisputed that Creditor did not receive any of the

$67,750.00 and that Borrowers' Agent did not undertake any efforts to facilitate a loan modification.

As a result of Borrowers' default, Creditor initiated foreclosure proceedings. But their Agent successfully slowed down those proceedings, allegedly without Borrowers' participation.

Borrowers' Agent allegedly forged an unauthorized grant deed (the "Grant Deed") purporting to transfer a 5% ownership interest in the Property to the debtor in this bankruptcy case, Elizabeth Vazquez ("Debtor"). The Grant Deed is dated January 18, 2016 (*i.e.,* before the commencement of this bankruptcy case, although the Grant Deed might well be back-dated).

In any event, on January 20, 2016, Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code. On January 21, 2016, Creditor received a facsimile containing the Grant Deed and a cover sheet notifying Creditor of this case, which implicated the automatic stay and succeeded in causing Creditor to halt the foreclosure process.

On August 28, 2017, Creditor filed a motion for relief from the automatic stay (dkt. 48, the "R/S Motion"). In support of the R/S Motion, Creditor presented undisputed evidence demonstrating multiple transfers of partial interests in the Property without Creditor's consent or court approval, as well as multiple bankruptcy filings affecting the Property. Creditor seeks relief that will be effective notwithstanding any future bankruptcy cases, pursuant to Section 362(d)(1) and (d)(4). One of the Borrowers, James Zarian ("Borrower"), filed an opposition (dkt. 52) to the R/S Motion.

The matter came on for hearing at the above-captioned date and time. This court made oral findings of fact and conclusions of law on the record, to be supplemented by this written Opinion

On October 12, 2017, this court entered an order (dkt. 60) granting Creditor immediate relief but staying any foreclosure proceedings until 28 days from the date of entry of this Opinion on the docket, so that Borrower will have "the opportunity to …

proceed with his anticipated appeal" or any other remedies without facing immediate foreclosure. An appeal is currently pending (*see* dkt. 64).

**2. DISCUSSION**

   **a. This Court Has Jurisdiction**

Federal courts have an independent duty to examine their own jurisdiction and authority. *See, e.g., In re Rosson,* 545 F.3d 764, 769 n. 5 (9th Cir. 2008). Therefore this court raised the following jurisdictional issue on its own initiative at the hearing.

Arguably, in a situation such as this one in which Debtor disclaims any interest in the Property, this Bankruptcy Court lacks *in rem* jurisdiction over the Property and therefore this court cannot grant so-called "*in rem*" relief – *i.e.,* relief that follows the Property into any future bankruptcy case. Borrower's counsel orally argued that this is so.

Having raised this argument, this court rejects it. First, the argument puts too much weight on the colloquial description of relief applicable notwithstanding future bankruptcy cases as "*in rem*" relief. The automatic stay is deemed to be an order of the Bankruptcy Courts, and Borrower has not cited any authority that the Bankruptcy Courts cannot decide the scope of their own orders without having *in rem* jurisdiction over property. *See generally In re Dyer,* 322 F.3d 1178, 1191 (9th Cir. 2003) ("the automatic stay qualifies as [a] court order") (citation omitted); *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000) (*en banc*) ("The automatic stay is an injunction issuing from the authority of the bankruptcy court").

Second, it is well established that, once the automatic stay has been implicated, Bankruptcy Courts have the jurisdiction and authority to grant relief from that stay, even if the property at issue is no longer part of the bankruptcy estate, such as after dismissal and closing of a case. *See, e.g., In re Aheong*, 276 B.R. 233 (9th Cir. BAP 2002) (jurisdiction to annul bankruptcy stay even after dismissal of case).

Third, assuming for the sake of discussion that it were necessary to have *in rem* jurisdiction over the Property, this court does have such jurisdiction. As this court

pointed out at the hearing, real property is traditionally described as a "bundle of rights" – not just dirt and improvements – and at least some rights were transferred to the bankruptcy estate under the exceptionally broad ambit of property that comes into the bankruptcy estate under Section 541.  The bundle of rights includes what can be described as the right of an owner of property to invoke the automatic stay to protect that property, and at least that much was transferred.  Borrower argues that there was no transfer of actual title because Debtor has subsequently refused to accept any transfer of the Property, but that misses the point: the only transfer that mattered was the issuance of the Grant Deed that was sufficient to implicate the automatic stay.  Put differently, Borrower cannot have it both ways: he transferred (through his Agent) enough of an interest in the Property to implicate the automatic stay, so he cannot deny that he transferred enough of an interest for this court to grant relief from the automatic stay as it affects the Property.  *See generally, e.g., Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1004 (1992) (using "bundle of rights" terminology); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 831 (1987) (same); *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984) (bankruptcy estate includes rights such as "choses in action and claims against third parties").

Fourth, and finally, Borrower is estopped to assert that his Agent's transfer was insufficient to give this court jurisdiction.  Having invoked this court's jurisdiction to obtain the benefits of the automatic stay (which, as noted above, is deemed to be an order of this court that this court issued in reliance on the representations in the Grant Deed), Borrower is estopped to assert that this court lacks jurisdiction to issue further orders granting relief from that stay. *See, e.g., Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position").

For all of the foregoing reasons, this court concludes that it has jurisdiction to grant relief from the automatic stay as set forth below.

**b.    Multiple Grounds Exist For This Court To Grant Relief, Including Relief That Continues to be Effecitve Notwithstanding Future Bankruptcy Cases**

Section 362(d) provides, in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, <u>such as</u> by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) <u>for cause</u>, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > * * *
> >
> > (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that <u>the filing of the petition was part of a scheme to delay, hinder, or defraud creditors</u> that involved either--
> >
> > > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> > >
> > > (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, <u>except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown</u>, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording. [11 U.S.C.A. § 362(d)(1) & (4) (emphasis added).]

It is undisputed that Borrowers are far behind in their mortgage payments. They have not suggested any way in which they could afford to cure their arrears, even over a substantial time. Therefore there is ample "cause" to terminate the automatic stay. The question is whether such relief can and should last only until some future bankruptcy case is filed.

For the reasons set forth below, this court concludes that the statute is broad enough to encompass relief that continues to be effective notwithstanding any future bankruptcy cases, both under the specific provisions of Section 362(d)(4) and, alternatively, under the broader powers of Section 362(d)(1). This court also concludes that such relief is appropriate in this case, subject to certain limitations including Borrowers' ability to seek relief based on changed circumstances or other good cause.

### c. Section 362(d)(4) Authorizes Relief That Continues to be Effective Notwithstanding Any Future Bankruptcy Cases

Creditor provided ample evidence that, in the words of Section 362(d)(4), there have been both "(A) [multiple] transfer[s] of all or part ownership of, or other interest in, [the] [P]roperty without the consent of the secured creditor or court approval" and, alternatively, "(B) multiple bankruptcy filings affecting such real property." That leaves two other elements of the statute that Creditor must satisfy.

#### (i) The filing of the petition was part of the scheme

This court must find "that the filing of the petition <u>was</u> part of a scheme to delay, hinder, or defraud creditors." Section 362(d)(4) (emphasis added). One way to read this clause is that the Debtor must have been <u>participating</u> in the scheme when she filed her bankruptcy petition. Under that reading Section 362(d)(4) would not apply if, as Debtor asserts, she was not part of any such scheme.

True, the fact that the grant deed is dated before the bankruptcy petition could imply that Debtor was part of the scheme – how else would Borrowers' Agent know that Debtor was about to file a bankruptcy petition? – but this court takes judicial notice that many hijacking cases involve back-dated, forged deeds. Debtor denies that she was

part of the scheme, no party in interest argued otherwise, and therefore this court finds that she was not. So, again, the question is whether Debtor's innocence is inconsistent with finding that the filing of her bankruptcy petition "was" part of a scheme of the type described in Section 362(d)(4).

As this court interprets Section 362(d)(4), its requirement that "the filing of the petition was part of a scheme to delay, hinder, or defraud creditors" encompasses situations in which the filing of the petition <u>has been made</u> part of a scheme – in other words, "was" is descriptive, not temporal.

As this court previously explained:

> Relief is appropriate under 11 U.S.C. § 364(d)(4) because, *as of the time when the scheme was implemented*, the debtor's 'filing of the petition was part of a scheme [by Transferor] to delay, hinder, or defraud creditors' (11 U.S.C. § 362(d)(4)). In other words, [this court] interpret[s] the term "was" as descriptive of the type of scheme (a scheme that involves the fact that filing the petition created an automatic stay), rather than as a temporal limitation intended by Congress to exclude schemes that are implemented post-petition. *In re Scarborough,* 461 F.3d 406, 411 (3d Cir. 2006) (interpreting the word "is" in 11 U.S.C. § 1322(b)(2) as descriptive, not temporal); *In re Abdelgadir,* 455 B.R. 896, 902-03 ([9th Cir. BAP] 2011) (same, under 11 U.S.C. § 1123(b)(5)). [*In re 4th Street Investors, Inc.,* 474 B.R. 709, 711-12 (Bankr. C.D. Cal. 2012) (emphasis in original).]

Accordingly, this element of Section 362(d)(4) is satisfied. That leaves one more element.

**(ii) Creditor holds a claim secured by an interest in real property that is subject to Section 362(a)**

Section 362(d)(4) applies "with respect to a stay of an act against real property under subsection (a) [of Section 362], by a creditor whose claim is secured by an interest in such real property." As set forth in the discussion of this court's jurisdiction, real property is generally conceived of as a bundle of rights, and part of that bundle was transferred to the estate and implicated the automatic stay of Section 362(a).

Accordingly, Creditor qualifies as a creditor "whose claim is secured by an interest in such real property."

**(iii) Borrowers' alleged lack of personal involvement in the scheme does not make Section 362(d)(4) inapplicable**

Borrower argues that it would be unfair for the court to grant relief from the automatic stay, especially relief that continues to be effective notwithstanding any future bankruptcy case, given Borrowers' asserted innocence. But there is nothing unfair in declining to make Creditor bear the burden of the harm caused by Borrowers' Agent.

The invocation of the automatic stay (whether expressly authorized by Borrowers or not) conferred a benefit upon them by preventing the foreclosure of the Property for many months. Moreover, presuming for the sake of this discussion that Borrowers did not authorize Agent's execution of the Grant Deed or its transmission to Creditor, Borrowers' acts of retaining their Agent and providing him with Creditor's name and other information about their loan was sufficient to cloak Agent with the apparent authority to act on their behalf. As explained more fully in section 35:13 of *Williston on Contracts*:

> When a principal has, by a voluntary act, placed an agent in a situation so that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that the agent has authority to enter into a particular contract or to perform a particular act, and the person deals with the agent on that assumption, the principal is estopped as against the third person from denying the agent's authority. The principal will not be permitted to prove that the agent's authority was, in fact, nonexistent or less extensive than that which the principal apparently conferred on the agent. [12 *Williston on Contracts* § 35:13 (4th ed.)]

The record clearly shows that Creditor reasonably and detrimentally relied on the Grant Deed by halting the foreclosure sale, and that Creditor has been further harmed as a result of the delay and expense associated with seeking relief from the automatic stay. True, Borrowers apparently were defrauded of many thousands of dollars by

their Agent, which is unfair; but their remedy is not to impose the consequences on Creditor, who was an innocent victim of Agent's scheme.

Additionally, for two independent reasons this court's ruling does not unduly prejudice Borrowers. First, the order granting the R/S Motion contains a provision staying the foreclosure for 28 days from the date of entry of this Opinion. That provides ample time for the Borrowers to seek a stay from an appellate court or other relief (if they can present sufficient grounds to do so).

Second, this court's order granting the R/S Motion tracks Section 362(d)(4) in that it does not prevent Borrowers from filing their own bankruptcy case in the future and moving for relief from this court's order "based upon changed circumstances or for good cause shown, after notice and a hearing." For example, if Borrowers can show that they now have greater income that will enable them to repay their secured debt to Creditor over time, and if they can satisfy the other requirements of the Bankruptcy Code to restructure their debt and retain their property, then they can do so under Chapter 13 or 11. Alternatively, even if they cannot retain their Property, they can benefit from the Bankruptcy Code's broad discharge of debts under Chapter 7, 11 or 13. They have not shown that there is anything unfair in these alternatives, let alone that any perceived unfairness could overcome the relief to which Creditor is entitled under Section 362(d)(4).

For all of the foregoing reasons, it is appropriate to grant Creditor's request for relief pursuant to section 362(d)(4). Alternatively, it is appropriate to grant that relief under the alternative authority described below.

### d. Other Provisions of the Bankruptcy Code Authorize Relief From the Automatic Stay That Continues to be Effective Notwithstanding Future Bankruptcy Cases

Section 362(d) authorizes the bankruptcy court to grant "relief" from the automatic stay "including" but <u>not limited</u> to the types of relief listed therein, "such as" by terminating, conditioning, or limiting the stay. As stated in Section 102(3), "'includes'

and 'including' are not limiting." There is no reason why this court should read into the statute a limitation that would prevent this court's order granting the R/S Motion from continuing to be effective notwithstanding future bankruptcy cases.

To the contrary, there are several grounds to read the statute to authorize such relief, either under Section 362(d)(1) alone, or in conjunction with other authority. First, there is a history of granting such relief.

Before paragraph "(4)" was added to Section 362(d), various courts held that they could grant relief that would continue to apply despite any future bankruptcy cases, either (i) based on the broad authorization to grant "relief" under Section 362(d)(1), or (ii) pursuant to the power in Section 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," or (iii) pursuant to the Bankruptcy Courts' inherent powers to determine the scope of their own (automatic) order imposing the stay, or (iv) some combination of the foregoing. *See, e.g., In re Golden State Capital Corp.,* 317 B.R. 144, 149 (Bankr. E.D. Cal. 2004); *In re Amey,* 314 B.R. 864, 869 (Bankr. N.D. Ga. 2004); *In re Price,* 304 B.R. 768 (Bankr. N.D. Ohio 2004).

When paragraph "(4)" was added, nothing in its text or legislative history purported to limit such authority under Section 362(d)(1), or under Section 105(a), or the inherent powers of the Bankruptcy Courts to interpret their own orders, which Congress conferred by the very act of establishing the Bankruptcy Courts. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove School Dist. v. T.A.,* 557 U.S. 230, 239-40 (2009) (citation omitted); *see also In re Henderson*, 395 B.R 893, 901 n. 15 (Bankr. S.C. 2008) (quoting *In re McCray*, 342 B.R. 668, 670 (Bankr. D.C. 2006) ("Congress gave no indication in enacting § 362(d)(4) that it intended to prevent bankruptcy courts from employing 11 U.S.C. § 105(a) . . . to enter orders, when necessary or appropriate, to prevent the harm arising from abusive filings.

If anything, the 2005 amendments evidence a congressional intent that the courts crack down on abusive filings by debtors").[2]

Second, a number of more recent decisions also support the foregoing analysis. *See, e.g., In re Rodriguez*, 516 B.R. 177, 179 n.2 (1st Cir. BAP 2014) (citing *In re Gonzalez-Ruiz*, 341 B.R. 371 (1st Cir. BAP 2006) ("[Section] 105(a) of the Bankruptcy Code authorizes a bankruptcy court to grant *in rem* relief in connection with granting relief from the stay under § 362(d) . . . ."); *In re Robles*, 2014 WL 3715092, at *1, 2014 Bankr. LEXIS 3193, at *2 (Bankr. N.D. Cal. July 24, 2014) ("[T]he Court retains the power to grant *in rem* relief pursuant to § 105(a)"); *In re Traub*, 2014 WL 1779261, at *4, 2014 Bankr. LEXIS 2028, at *11 (Bankr. S.D. Ga. May 5, 2014) ("Congress did not limit *in rem* relief to § 362(d)(4)"); *In re Taipin*, 2013 WL 3936377, at *2, 2013 Bankr. LEXIS 3047, at *5 (Bankr. D. Hawaii July 30, 2013) ("The court has the authority to grant *in rem* relief [under § 105] . . . .").

Third, although relief that continues to be effective despite a future bankruptcy case must be, by definition, without notice to whatever future creditors might exist in that case, it is well established that such lack of prior notice is not an absolute bar to granting relief. Under Section 102(1), the phrase "after notice and a hearing" or similar

---

[2] This court is aware that Section 105(a) is not a roving commission to do equity, and must be used to implement the statute, not expand it. The undersigned Bankruptcy Judge respectfully disagrees, however, with decisions that appear to narrow Section 105(a) almost if not entirely out of existence, if by doing so they would deprive the Bankruptcy Courts of the power to prevent the type of hijacking abuse described in this Opinion. *See generally In re Johnson*, 346 B.R. 190, 195-96 (9th Cir. BAP 2006) (relief in future cases not available under Section 105(a)). *Compare In re Fernandez*, 212 B.R. 361, 372 (Bankr. C.D. Cal. 1997), *aff'd on other grounds*, 227 B.R. 174 (9th Cir. BAP 1998); *and see also, e.g., In re Henderson,* 395 B.R. 893, 901-02 (Bankr. D. S.C. 2008) (relief in future cases not limited to § 362(d)(4)).
   This court is also aware that some authorities construe a request for relief that will last despite future bankruptcy cases as a request for injunctive, declaratory, or other equitable relief that requires an adversary proceeding under Rules 7001(2) and (7). *See generally In re Van Ness,* 399 B.R. 897, 904 (Bankr. E.D. Cal. 2009). But it is not apparent to the undersigned Bankruptcy Judge why granting relief from the automatic stay should be construed as injunctive relief, nor why more elaborate procedures should be required under Section 362(d)(1) than would be required to grant the same type of relief under Section 362(d)(4). Alternatively, supposing for the sake of discussion that an adversary proceeding were required, that issue has been waived and forfeited. *See, e.g., In re Cox*, 68 B.R. 788, 803 (Bankr. D. Or. 1987).

phrase means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances," and authorizes the Bankruptcy Courts to act without a hearing if "there is insufficient time for a hearing to be commenced …." When faced with the type of abuse represented by hijacking, there is never sufficient time for a hearing because every time relief is granted the hijacker simply chooses another case to hijack. It is exactly to prevent any such abuse that Section 102(1) authorizes *ex parte* relief, as the drafters of Rule 4001(a)(2) recognized when they authorized *ex parte* relief from the automatic stay.

For all of the foregoing reasons, Section 362(d)(4) is not the only basis to grant relief from the automatic stay that will continue to be effective despite the filing of future bankruptcy cases. The broad authorization in Section 362(d)(1) to grant any type of relief from the automatic stay is sufficient. Alternatively, and in addition, the authority granted by Section 105(a) and the Bankruptcy Courts' inherent powers to determine the scope of their own (automatic) order imposing the stay are sufficient grounds to grant such relief.

None of the foregoing means that it would be appropriate to deprive Borrowers of any recourse at all. As set forth in this court's order granting the R/S Motion, they can seek relief either due to changed circumstances or for any other good cause shown. All that this court is ruling is that the burden is on them to show why this court's order granting the R/S Motion should not continue to apply.

//

### 3. CONCLUSION

For the reasons set forth above, this court has issued its order granting Creditor's R/S Motion, including relief that will continue to be effective notwithstanding any future bankruptcy cases. That relief is subject to the limitations set forth in that order, including the ability to seek relief from that order in any future bankruptcy case due to changed circumstances or other good cause shown.

###

Date: December 29, 2017

Neil W. Bason
United States Bankruptcy Judge